# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

George Bochetto, Esq.
Bochetto & Lenz
1524 Locust Street
Philadelphia, PA 19103
Tel. 215.735.3900
Attorney I.D. 27783

Thomas Sullivan, Esq.
Marks & Sokolov, LLC
1835 Market Street
28th Floor
Philadelphia, PA 19103
Tel. 215.569.8901
Attorney I.D. 63541

*Attorneys for Plaintiffs*

|  |  |
|---|---|
| BRUCE S. MARKS and MARKS, LLC d/b/a MARKS & SOKOLOV, LLC, | : : : : |
|  | : Civil No. 2:08-cv-05651 |
| PLAINTIFFS, | : : |
| V. | : **CROSS-MOTION TO DECLARE** |
|  | : **SERVICE VALID OR TO PERMIT** |
| ALFA GROUP a/k/a | : **SERVICE BY ALTERNATIVE MEANS** |
| CROWN FINANCE FOUNDATION, ALTIMO HOLDINGS & INVESTMENT LTD, and FINANCIAL DYNAMICS LTD, | : : : : |
|  | : |
| DEFENDANTS. | : : |

Plaintiffs Bruce S. Marks and Marks, LLC d/b/a Marks & Sokolov, LLC move this Court

to declare the service effectuated upon Alfa Group a/k/a Crown Finance Foundation valid or, in

the alternative, to permit Plaintiffs Bruce S. Marks and Marks, LLC d/b/a Marks & Sokolov,

LLC, to serve Defendant Alfa Group a/k/a Crown Finance Foundation by alternative means, and

to grant any further relief that the Court deems just and proper.

Respectfully submitted,

Dated: Philadelphia, Pennsylvania
      March <u>13</u>, 2009

*/s/ Thomas C. Sullivan, Esq.*
Thomas C. Sullivan, Esq. (63541)
Marks & Sokolov, LLC
1835 Market Street
28th Floor
Philadelphia, Pennsylvania 19103
215.569.8901
tsullivan@mslegal.com

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
### CROSS-MOTION TO DECLARE SERVICE VALID OR
### TO PERMIT SERVICE BY ALTERNATIVE MEANS

Plaintiffs submit this Memorandum in support of their Cross Motion to Declare Service

Valid or to Permit Service by Alternative Means upon Defendant Alfa Group a/k/a Crown

Finance Foundation ("Crown"), by effectuating service upon its (A) attorneys of record Harkins,

Cunningham, LLP ("Harkins'), (B) long time counsel Akin, Gump, Strauss, Hauer & Feld, LLP

("Akin Gump"), (C) its New York subsidiary Alfa Capital Markets (USA), Inc. and/or (D)

subsidiary and co-defendant Altimo Holdings and Investments Ltd. ("Altimo").

### PRELIMINARY STATEMENT

Plaintiffs have crossed moved for an order declaring that Crown has been properly

served, or, in the alternative, permitting alternate service, in response to Crown's Motion to

Dismiss Crown, which asserts, *inter alia*, that Crown was not properly served.   Crown is game

playing.[1]  Unlike its co-defendants, who agreed not to contest service in return for an extension

to respond to the complaint, Crown has contested service because it is located in Liechtenstein,

which is not a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial

Documents in Civil or Commercial Matters or any other agreement with the United States

governing service and imposes the burdensome process of service by letters rogatory, which may

take up to a year and requires, *inter alia*, the letters rogatory, summons, complaint, and exhibits

to be translated into German, a completely unnecessary exercise, which could cost in excess of

$20,000.  Pursuant to Fed.R.Civ.P. 1, the Court should grant the motion to secure the "just,

---

[1] Game playing is not new to Crown.  In litigation involving its subsidiary Storm, LLC, which is represented by
Ronald S. Rolf of Cravath, Swain & Moore, LLP, Crown's instant counsel, Judge Lynch repeatedly found Storm in
contempt of court, most recently fining it $100,000 per day, doubling to $200,000 per day after 30 days, and
continuing to double every 30 days thereafter. *Telenor Mobile Commc'ns AS v. Storm LLC*, March 11, 2009
Decision and Transcript, attached hereto as Exhibit "E". *See also Telenor Mobile Commc'ns AS v. Storm LLC*, 587
F. Supp. 2d 594 (S.D.N.Y. 2008) (Lynch, J.) (holding Altimo in contempt of court and fining it for $100,000 per
day).

speedy, and inexpensive determination" of this action.

## FACTUAL BACKGROUND

Crown is a foreign entity incorporated and registered in Vaduz, Liechtenstein.

Crown, through its Russian subsidiary OJSC "Alfa Bank", is the parent of Alfa Capital Markets (USA), Inc. ("Alfa Capital"). *See Alfa Capital Markets' Securities and Exchange Commission Form X-17A-5, attached hereto as Exhibit "A".* Alfa Capital is a New York corporation with the principal place of business in New York, NY.

Altimo, another Crown subsidiary, is a British Virginia Islands corporation and co-defendant in the instant action. It is represented by Harkins, the same counsel as Crown.

Akin, Gump has represented Crown in the *Norex Petroleum Ltd. v. Access Industries, Inc., et al.* litigation since 2002, which is currently pending before the Second Circuit. *See Norex Petroleum Ltd. v. Access Industries, Inc., et al.*, 02 Civ. 1499 (LTS)(KNF).

### Crown's Refusal to Accept Service

On December 12, 2008, Plaintiffs wrote to Akin, Gump to see if the firm would accept service. It declined.

On December 12, 2008, Plaintiffs requested the Clerk to effectuate service upon Crown. On December 15, 2008, the Deputy Clerk mailed a copy of the complaint and the summons via registered mail, return receipt requested to Crown's office in Liechtenstein. It is not clear whether Crown has accepted or refused this package, which was received in Switzerland on or about January 7, 2009. *See* U.S. Postal Service Track & Confirm email attached hereto as Exhibit "F".

On January 16, 2009, Plaintiffs also sent a copy of the complaint and summons to Crown in Liechtenstein by Federal Express. This package was delivered and accepted on January 20,

2009, as confirmed by the signed Federal Express signature card, attached hereto as Exhibit "B".

In December, 2008, McCarter & English LLP, counsel for Financial Dynamics and Harkins and Cravath, Swaine & Moore LLP ("Cravath"), counsel for Altimo, agreed not to contest service in return for an extension until February 27, 2009 to respond to the Complaint; however, these counsel, who are now also counsel for Crown, refused to make such an agreement for Crown.

### Crown's Motion to Dismiss for Failure to Serve

On February 4, 2009, Harkins and Cravath entered an appearance for Altimo (but not Crown), and on February 27, 2009, Harkins and Cravath filed a motion to dismiss on behalf of Crown, which, *inter alia*, contested service.  Liechtenstein is not a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which is the primary treaty on service of judicial documents abroad. According to the Declaration of Guntram Wolf, ¶10, submitted by Crown, Liechtenstein "requires that service of international summons and complaint be made by letters rogatory" in order to be valid under Liechenstein law.   Wolf's Declaration does not assert that Liechtenstein prohibits the service of documents by mail.

According to the U.S. Department of State, "[e]xecution of letters rogatory may take a year or more worldwide." *See* State Department Summary attached hereto as Exhibit "C".  "The estimate time frame for Liechtenstein can range from 2 to 15 months." *See* Processnet Summary attached hereto as Exhibit "D".  "This method is time consuming, cumbersome, and should be used only when other options are not available." *Id.*  The estimated charges for serving letters rogatory in Liechtenstein are $1,975. *Id.*  Moreover, documents served by letters rogatory in Liechtenstein must be translated into German, which would amount to even higher level of

3

expenses.   The estimated translation costs for translating the summons, complaint, exhibits, and letter rogatory at $0.38 per word would be over $15,000.   The legal fees to prepare the letter rogatory would amount to least $3,000.

## ARGUMENT

### A. SERVICE UPON CROWN WAS SUFFICIENT UNDER U.S. LAW

Service upon defendant located in a foreign country may be effected by any means permitted under Fed.R.Civ.P.4(f), which is applicable to the service of a corporation, partnership, or association pursuant to Fed.R.Civ.P. 4(h)(2).   *"[U]nless prohibited* by the foreign country's law", Fed.R.Civ.P. 4(f)(C)(ii) allows to effect service by "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt".   Service by mail that the clerk addresses is sufficient as long as such foreign state does not expressly prohibit this form of service through an international agreement or domestic law.

In *Trueposition, Inc. v. Sunon, Inc.*, 2006 U.S. Dist. LEXIS 39681 (E.D. Pa. June 14, 2006) (Dubois, J.), the Clerk sent the summons and complaint to a defendant in Taiwan via international registered mail, return receipt.   The defendant challenged service on the grounds that Taiwan law did not prescribe service in this manner.   The Court rejected this interpretation of Rule 4(f)(2)(C)(ii), adopting the majority rule, holding:

> The question of the meaning of the "prohibited by" clause in Rule 4(f)(2)(C)(ii) has been considered by a number of courts. Several courts have adopted the approach suggested by Sunonwealth [defendant]… More courts, however, have interpreted the clause in the manner suggested by plaintiff. These courts have reasoned that the only way to give Rule 4(f)(2)(C) operative effect is to interpret it to mean that *service by registered mail is appropriate so long as it is not expressly prohibited, even if it is not expressly prescribed*…. Thus, the Court concludes that plaintiff's choice of method for service of process is valid under Rule 4(f)(2)(C)(ii) unless it is expressly prohibited by the law of Taiwan.

*Trueposition* at \*13 (emphasis added).[2]

In *Jung v. Neschis*, 2003 U.S. Dist. LEXIS 5569 (S.D.N.Y. Apr. 7, 2003), cited by Crown, the court held that international registered mail to Liechtenstein did not satisfy subsection Rule 4(f)(2)(C)(ii) because the laws of Liechtenstein prescribed for international service to be effectuated through letters rogatory; notably, the Court did not hold that Liechtenstein law itself prohibited service by such means; rather, it erroneously concluded that because Liechtenstein did not prescribe service by mail, this was equivalent to a prohibition.

The *Jung* court's minority view (the method of service must be specifically permitted) has already been rejected by *Trueposition*. Other district courts in New York have also refused to follow *Jung's* approach. In *SEC v. Alexander*, 248 F.R.D. 108 (E.D.N.Y. 2007), the court rejected *Jung's* reasoning, holding that "the foreign jurisdiction must *expressly prohibit* the means of service included in (f)(2)(C) in order to preclude service under that subdivision…. I agree with this majority position." *Id.* at 112 (citing *Trueposition* at \* 4).

Although Wolf cites provisions of Liechtenstein Code Jurisdiction which prescribe service by letter rogatory, Wolf does not cite a single provision of the Code which states that service via return receipt mail is prohibited under Liechtenstein law.   Rule 4(f)(2)(C) permits service, which "while not specifically prescribed by the laws of a foreign country, [is] also not prohibited by such laws." *Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 430 (D. Del. 1999).   Therefore, Plaintiffs' method of service through the Clerk is valid under the U.S. law.[3]   While there could be difficulties enforcing a judgment rendered in this

---

[2] *Trueposition* cited numerous cases in support of its holding. *See, e.g., Resource Ventures, Inc. v. Resources Management Int'l, Inc.*, 42 F. Supp. 2d 423 (D. Del. 1999); *Emery v. Wood Industries, Inc.*, 2001 U.S. Dist. LEXIS 12914, 2001 WL 951579, at \*2 (D.N.H. Aug. 20, 2001); *Caringal v. Karteria Shipping, Ltd.*, 2000 U.S. Dist. LEXIS 10890, 2000 WL 1036224, at \*2 (E.D. La. July 25, 2000); *Banco Latino S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273, 1277 (S.D. Fla. 1999); *Dee-K Enterprises, Inc. v. Heveafil Sdn., Bhd.*, 174 F.R.D. 376 (E.D. Va. 1997).

[3] Although the U.S. Post Office has not confirmed that Crown received the mailing, Crown received the identical

case in Liechtenstein because service did not comply with its law, that is irrelevant to the issue as to whether Crown was served under U.S. law.

## B. IN THE ALTERNATIVE, THE COURT SHOULD DIRECT SERVICE PURSUANT TO Fed.R.Civ.P. 4(f)(3)

Fed.R.Civ.P. 4(f)(3), applicable to Crown pursuant to Rule 4(h)(2), provides for service by any "means not prohibited by international agreement as may be directed by the court." "[S]ervice of process under Rule 4(f)(3) is neither a "last resort" nor" extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). "Rule 4(f) does not denote any hierarchy or preference of one method of service over another." *Id*. at 1015. Further, "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." *Id*.

"[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)", and trial courts have broad discretion in crafting alternative methods of serving foreign defendants outside of the United States taking into account the particularities and necessities of a given case. *Id*. at 1016. "Applying Rule 4(f)(3), courts have authorized several alternative methods of service, including service by publication, ordinary mail, mail to the defendant's last known address, ***delivery to the defendant's attorney, delivery to the defendant's United States subsidiary***, telex, and, increasingly, e-mail." *1st Tech., LLC v. Digital Gaming Solution*s, et al, 2008 U.S. Dist. LEXIS 88341, *20; 71 Fed. R. Serv. 3d (Callaghan) 1399 (E.D.Mo. 2008) (relying on *Rio Properties* at 1016 and citing numerous cases in support) (*emphasis added*).

---

mailing through the Federal Express sent by Plaintiffs. To the extent that Crown has refused to accept the U.S. Postal mailing, it should not be permitted to evade service. Under its equitable power, this Court can find that service was effectively made by receipt of the Federal Express package.

Since Liechtenstein is not a party to any international agreement with the United States, this Court may permit service upon Crown by any means which would provide a reasonable notice to Crown. "Under the plain language of Rule 4(f)(3), service of process must be directed by the court, and must not be prohibited by any international agreement. There are no other limitations within the rule. In fact, the court may order service under Rule 4(f)(3) that does not comply with the laws of the foreign country." *1st Tech., LLC v. Digital Gaming Solutions, et al*, 2008 U.S. Dist. LEXIS 88341, *20; 71 Fed. R. Serv. 3d (Callaghan) 1399 (E.D.Mo. 2008) (relying on *Rio Properties* at 1015-1017).

The goal of providing a reasonable notice to the Crown may be accomplished by either permitting service under Rule 4(f)(3) upon Crown by either mailing documents to (a) Altimo at its registered office in the B.V.I., (b) Crown's attorneys (Harkins and/or Akin Gump) in the United States, or (c) Alfa Capital Markets at its registered address in New York.[4]

## C. THE COURT MAY DIRECT SERVICE WITHIN THE UNITED STATES

<u>First</u>, Fed.R.Civ.P. 4(h)(1) provides for judicial service in a district of the United States

   (A) in the manner prescribed by Fed.R.Civ.P. 4(e)(1) for serving an individual; or
   (B) by delivering a copy of the summons and of the complaint to … any other agent authorized by appointment or by law to receive service of process.

<u>Second</u>, Fed.R.Civ.P. 4(e) provides a defendant may be served in a judicial district of the United States (1) "following state law for serving a summons in an action brought in courts of

---

[4] Rule 4(f) provides for service of a defendant located outside of the United States through service "at a place not within any judicial district of the United States." Courts focus on the location of the defendant and routinely permit service within the United States on defendants located outside of the United States. *See e.g. RSM Prod. Corp. v. Fridman*, 2007 U.S. Dist. LEXIS 37713 (S.D. N.Y. 2007) (permitting service of Russian principal of Crown at Akin Gump's office in United States) and other cases authorizing service on defendants' U.S. counsel, *Arista Records LLC v. Media Services, LLC*, 69 Fed.R.Serv.3d (S.D. N.Y. 2008); *Forum Fin. Group v. President & Fellows of Harvard College*, 49 Fed. R. Serv. 3d 803 (D. Me. 2001); *Ehrenfeld v. Mahfouz*, 2005 U.S. Dist. LEXIS 4741 (S.D.N.Y. Mar. 23, 2005); *BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 2005 U.S. Dist. LEXIS 27452 (E.D. Va. 2005).

general jurisdiction in the state where the district court is located or where service is made; or …
(2)(C) delivering a copy of each to an agent authorized by appointment or by law to receive
process."

Third, pursuant to Pa.R.Civ.P. 404(3), service outside of the Commonwealth may be
made "in the manner provided by the law of the jurisdiction in which the service is made for
service in an action in any of its courts of general jurisdiction."   Pursuant to NY CLS CPLR §
311, service upon any domestic or foreign corporation shall be made by delivering the summons
"to an officer … any other agent authorized by appointment or by law to receive service… If
service upon a domestic or foreign corporation … is impracticable … service upon the
corporation may be made in such manner, and proof of service may take such form, as the court,
upon motion without notice, directs."

In short, federal, New York, and Pennsylvania law all permit courts to allow service upon
agents of foreign defendants, including service on subsidiaries and counsel located in the United
States.  "Where service on a domestic agent is valid and complete under both state law and the
Due Process Clause, our inquiry ends." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S.
694, 708 (1988). There is no need to transmit documents abroad if service of process may be
completed locally.  "Due Process Clause does not require an official transmittal of documents
abroad every time there is service on a foreign national." *Id.* at 708 (upholding the validity of the
service of process on German corporation by serving domestic subsidiary).

In *RSM Prod. Corp. v. Fridman*, 2007 U.S. Dist. LEXIS 37713 (S.D.N.Y., May 24,
2007), Mikhail Fridman, one of Crown's principals, contested service of process upon Akin,
Gump, his counsel in another proceeding, after plaintiffs unsuccessfully attempted to serve him
in Russia.  The court concluded that allowing plaintiffs to effectuate service in an alternative

manner serves the "the core function of service [which] is to supply notice of the pendency of a legal action, in manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Id.* *2 (*quoting Luessenhop v. Clinton County, New York*, 466 F.3d 259, 269 (2d Cir. 2006) and *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The court further observed that "court ordered service on counsel ... serves as effective authorization "by law" for counsel to receive service." *Id.* at 17. *See, also, Arista Records LLC v. Media Services, LLC*, 69 Fed.R.Serv.3d (S.D. N.Y. 2008) (authorizing service on defendants' U.S. counsel). The fact that Mr. Fridman had the knowledge of the lawsuit supported its order. *Id.* at *17.

Instantly, Crown has notice of the proceeding since its counsel has entered an appearance and filed a motion to dismiss. Permitting Plaintiffs to effectuate service by serving the complaint and summons upon Crown's United States agents, which this court may authorize "by law", *i.e.*, Harkins, its current counsel; Akin, Gump, its long term counsel; and/or Alfa Capital, Crown's U.S. subsidiary, will satisfy due process service requirements, avoid delay, and minimize expense.

## D. ALTERNATE SERVICE WOULD BE APPROPRIATE BASED ON CONSIDERATIONS OF DELAY AND EXPENSE UNDER FED.R.CIV.P. 1

There is no good sense reason to impose temporal delay of up to a year and financial burden in excess of $20,000 on Plaintiffs,[5] particularly given (1) Crown is the parent company of a billion dollar conglomerates (Altimo, Alfa Bank) which routinely conduct business and litigation in English, (2) Plaintiffs are an individual and small law firm who are the victims of

---

[5] *See Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 2005 U.S. Dist. LEXIS 89021 (S.D.N.Y. 2005) ("It would therefore be unduly burdensome to require Ex-Im to initiate letters rogatory in order to have the pleadings served by a bailiff in Indonesia. The alternative -- service by an international courier -- has already proven effective.").

Crown's intentional wrongdoing; and (3) Crown indisputably has notice of the lawsuit.   The

only purpose of Crown's motion is to impose unnecessary delay and burden, contrary to the

purposes of the Federal Rules, as articulated in Fed.R.Civ.P. 1.

## CONCLUSION

Based on the foregoing, this Court should grant the Motion and find that Crown has been

served, or, alternatively, authorize service of the Complaint by alternative means.

Respectfully submitted,

*/s/ Thomas C. Sullivan*
Thomas C. Sullivan, Esq. (63541)
MARKS & SOKOLOV, LLC
1835 Market Street
28th Floor
Philadelphia, PA  19103
(215) 569-8901

George Bochetto, Esq. (27783)
BOCHETTO & LENZ
1524 Locust Street
Philadelphia, PA 19103
(215) 735-3900

Attorneys for Plaintiffs
Bruce S. Marks and
Marks, LLC d/b/a
Marks & Sokolov, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRUCE S. MARKS and :
MARKS, LLC d/b/a/ :
MARKS & SOKOLOV, LLC, :  Civil No. 2:08-cv-05651
         :
  PLAINTIFFS,   :
         :
V.         :
         :
ALFA GROUP a/k/a/  :
CROWN FINANCE FOUNDATION, :
ALTIMO HOLDINGS &  :
INVESTMENT LTD, and  :
FINANCIAL DYNAMICS LTD, :
         :
  DEFENDANTS.   :
         :

### [PROPOSED] ORDER

NOW, this _____ day of _____, 2009, upon consideration of Plaintiffs'

Cross-Motion to Declare Service Valid or to Permit Service by Alternative Means, and any

opposition thereto, it is hereby ORDERED that the motion is GRANTED.  Service of process

effectuated upon Alfa Group a/k/a Crown Finance Foundation is declared to be valid and in

compliance with Fed.R.Civ.P.4(f)(C)(ii).


ENTERED this ____ day of March, 2009.  _____

          Harvey Bartle, II, Chief Judge, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRUCE S. MARKS and                    :
MARKS, LLC d/b/a/                     :
MARKS & SOKOLOV, LLC,                 :          Civil No. 2:08-cv-05651
                                      :
       PLAINTIFFS,                    :
                                      :
V.                                    :
                                      :
ALFA GROUP a/k/a/                     :
CROWN FINANCE FOUNDATION,             :
ALTIMO HOLDINGS &                     :
INVESTMENT LTD, and                   :
FINANCIAL DYNAMICS LTD,               :
                                      :
       DEFENDANTS.                    :
                                      :

[PROPOSED] ORDER

NOW, this _____ day of _____, 2009, upon consideration of Plaintiffs'

Cross-Motion to Declare Service Valid or to Permit Service by Alternative Means, and any

opposition thereto, it is hereby ORDERED that the motion is GRANTED.  Plaintiffs are directed

to effectuate service upon Defendant Alfa Group a/k/a Crown Finance Foundation by alternative

means:

    [    ]    by mailing a copy of complaint and summons to its counsel, Harkins Cunningham, LLP;

    [    ]    by mailing a copy of complaint and summons to its long term counsel Akin, Gump, Strauss, Hauer & Feld, LLP;

    [    ]    by mailing a copy of complaint and summons to its U.S. based subsidiary, Alfa Capital Markets (USA), Inc.;

[    ]        by mailing a copy of complaint and summons to its subsidiary Altimo Holdings and Investments, Ltd., at the registered address in the British Virginia Islands.

ENTERED this ___ day of _____, 2009.

_____
Harvey Bartle, II, Chief Judge, U.S.D.J.