IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRUCE S. MARKS AND MARKS, LLC D/B/A
MARKS & SOKOLOV, LLC,

                              Plaintiffs,

                vs.                              CIVIL ACTION NO. 08-5651

ALFA GROUP A/K/A CROWN FINANCE
FOUNDATION, ALTIMO HOLDINGS &
INVESTMENTS LTD., AND FINANCIAL
DYNAMICS LTD.,

                              Defendants.

## ORDER

      AND NOW, this _____ day of _____, 2009, upon consideration of

Plaintiffs' Cross-Motion to Declare Service Valid or to Permit Service by Alternative Means,

and defendants Altimo Holdings & Investments Ltd. and Crown Finance Foundation's

opposition thereto, it is hereby ORDERED that the cross-motion is DENIED.

                                        _____

                                        Harvey Bartle, III, Chief Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRUCE S. MARKS AND MARKS, LLC D/B/A
MARKS & SOKOLOV, LLC,

Plaintiffs,

vs.

ALFA GROUP A/K/A CROWN FINANCE
FOUNDATION, ALTIMO HOLDINGS &
INVESTMENTS LTD., AND FINANCIAL
DYNAMICS LTD.,

Defendants.

CIVIL ACTION NO. 08-5651

**CROWN FINANCE FOUNDATION'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION TO DECLARE SERVICE VALID OR TO PERMIT
SERVICE BY ALTERNATIVE MEANS**

John G. Harkins, Jr. (04441)
Eleanor Morris Illoway (40632)
HARKINS CUNNINGHAM LLP
2800 One Commerce Square
2005 Market Street
Philadelphia, PA 19103
(215) 851-6700

Ronald S. Rolfe
K. Timothy Kline
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant Crown Finance
Foundation.*

March 30, 2009

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... ii

Preliminary Statement................................................................................................1

Argument ....................................................................................................................2

I.   SERVICE UPON CROWN WAS INSUFFICIENT UNDER U.S. LAW ..............2

II.  THE COURT, IN ITS DISCRETION, SHOULD REFUSE TO ORDER
     ALTERNATIVE SERVICE PURSUANT TO RULE 4(f)(3)...................................4

     A.   Applicable Legal Standard..................................................................4

     B.   The Court Should Not Order Alternative Service Pursuant To Rule 4(f)(3)...........5

          1.   Service On Altimo Or Alforma Capital Is Inappropriate............................6

          2.   Plaintiffs Should Not Be Allowed To Serve CFF's Attorneys As
               A Matter Of Constitutional Law And Public Policy....................................6

          3.   Plaintiffs Have Not Undertaken Reasonable Efforts To Serve Process
               Before Requesting Alternative Service........................................................7

          4.   Service By Any Other Method Does Not Minimize Offense To
               Liechtenstein Law ......................................................................................9

          5.   Rule 4(f) Does Not Authorize Service On Harkins, Akin Or Alforma
               Capital ........................................................................................................9

III. SERVICE IS INAPPROPRIATE PURSUANT TO RULES 4(h) AND 4(e) .......11

     A.   Applicable Legal Standard................................................................11

     B.   Service Upon Harkins, Akin And/Or Alforma Capital Is Inappropriate
          Under Rule 4(h)(1)(B) ......................................................................12

     C.   Service Upon Harkins Is Inappropriate Under Pennsylvania Law ......................13

     D.   Service Upon Akin And/Or Alforma Capital Is Inappropriate Under
          New York Law...................................................................................14

IV.  PLAINTIFFS' CONCERNS WITH DELAY AND EXPENSE ARE
     UNFOUNDED...................................................................................................16

Conclusion ...............................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Tech., LLC v. Digital Gaming Solutions S.A.*, No. 04:08 CV 586 DDN, 2008 WL 4790347 (E.D. Mo. Oct. 31, 2008) ..................................................................8

*Al-Dohan v. Kouyoumjian,* 461 N.Y.S.2d 2 (1st Dep't 1983) ....................................15

*Allstate Ins. Co. v. Funai Corp.*, 249 F.R.D. 157 (M.D. Pa. 2008) ......................13, 17

*Arista Records LLC v. Media Servs. LLC*, No. 06 Civ. 15319(NRB), 2008 WL 563470 (S.D.N.Y. Feb. 25, 2008) ...........................................................................10

*Beecher v. Wallace*, 381 F.2d 372 (9th Cir. 1967) ......................................................8

*BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263 (E.D. Va. 2005) ............................10

*Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004) ......................................................4

*Brown v. Our Lady of Lourdes Med. Ctr.*, 767 F. Supp. 618 (D.N.J. 1991) ...............13

*Bucks County Playhouse v. Bradshaw*, 577 F. Supp. 1203 (E.D. Pa. 1983) ................7

*City of Philadelphia v. Berman*, 863 A.2d 156 (Pa. Commw. Ct. 2004).....................14

*Countrywide Home Loans, Inc. v. Stringer*, No. 3:CV-07-2072, 2008 WL 3853239 (M.D. Pa. Aug. 15, 2008)..................................................................14

*David v. Total Identity Corp.*, 857 N.Y.S.2d 380 (4th Dep't 2008) ...........................16

*E. Cont'l Gems, Inc. v. Yakutiel*, 582 N.Y.S.2d 594 (N.Y. Sup. Ct. 1992) ................15

*Ehrenfeld v. Mahfouz*, No. 04 Civ. 9641(RCC), 2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) ...........................................................................................................10

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, No. 03Civ.8554(LTS)(JCF), 2005 WL 1123755 (S.D.N.Y. May 11, 2005)...............4, 5, 9, 16

*Fleming v. Malouf*, 7 F.R.D. 56 (W.D.N.Y. 1947) .....................................................12

*Forum Fin. Group, LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22 (D. Me. 2001)..................................................................................................10

*Friedman v. Estate of Presser*, 929 F.2d 1151 (6th Cir. 1991).....................................4

*Froland v. Yamaha Motor Co.*, 296 F. Supp. 2d 1004 (D. Minn. 2003) ........................4

ii

*Gustaff v. Marathon Healthcare Corp./Monarch Staffing*, No. 22611/08, 2009
    WL 55009 (N.Y. Sup. Ct. Jan. 8, 2009)..................................................................12

*Hypo Bank Claims Group, Inc. v. Am. Stock Transfer & Trust Co.*, 791 N.Y.S.2d
    870 (N.Y. Sup. Ct. 2004) ............................................................................... 15-16

*In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, No. 1428 (SAS),
    01 Civ. 7342, 2003 WL 1807148 (S.D.N.Y. Apr. 4, 2003).....................................9

*Jung v. Neschis*, No. 01 Civ. 6993(RMB), 2003 WL 1807202 (S.D.N.Y. Apr. 7,
    2003) ......................................................................................................................2, 3

*Kuklachev v. Gelfman*, No. 08-CV-2214(CPS), 2008 WL 5068860 (E.D.N.Y.
    Nov. 24, 2008) ..........................................................................................10, 11, 12

*Lazaridis v. Wehmer*, Civ. Action No. 06-793 SLR, 2008 WL 4758551 (D. Del.
    Oct. 28, 2008) .........................................................................................................16

*Linden Chiropractic, P.C. v. State-Wide Ins. Co.*, 816 N.Y.S.2d 888 (N.Y. City
    Ct. 2006) .................................................................................................................12

*Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan*, Civil Action No. H-06-2683,
    2007 WL 2964817 (S.D. Tex. Oct. 9, 2007).........................................................5, 8

*Nelson v. Swift*, 271 F.2d 504 (D.C. Cir. 1959) ...........................................................12

*Prewitt Enters., Inc. v. Org. of Petroleum Exp. Countries*, 353 F.3d 916 (11th Cir.
    2003) ........................................................................................................... 5, 7-8, 9

*Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423 (D. Del. 1999)...........3

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ........................ 7-8

*RSM Prod. Corp. v. Fridman*, No. 06 Civ. 11512(DLC), 2007 WL 1515068
    (S.D.N.Y. May 24, 2007).........................................................................................7, 10

*Santarelli v. Procaccini*, 42 Pa. D. & C.4th 82 (C.P. Phila. 1998)...............................14

*SEC v. Alexander*, 248 F.R.D. 108 (E.D.N.Y. 2007).......................................................3

*Silvious v. Pharaon*, 54 F.3d 697 (11th Cir. 1995)................................................. 10-11

*U.K. LaSalle, Inc. v. Lawless*, 618 A.2d 447 (Pa. Super. Ct. 1992) ........................13, 14

*United States v. Marple Cmty. Record, Inc.*, 335 F. Supp. 95 (E.D. Pa. 1971) ...... 12-13

**Statutes & Rules**

Fed. R. Civ. P. 4(e) ...................................................................................10, 11, 12, 13

Fed. R. Civ. P. 4(f) ........................................................................................... 5, 10

Fed. R. Civ. P. 4(f)(2) ....................................................................................... passim

Fed. R. Civ. P. 4(f)(3) ....................................................................................... passim

Fed. R. Civ. P. 4(h) .......................................................................................... passim

Fed. R. Civ. P. 4(*l*) .............................................................................................4

Fed. R. Civ. P. 12(b) ...........................................................................................7

Pennsylvania Rule of Civil Procedure 402 ........................................................ 13-14

Pennsylvania Rule of Civil Procedure 404 .............................................................14

Pennsylvania Rule of Civil Procedure 430 .............................................................14

N.Y. C.P.L.R. § 311 ..................................................................................... 14-15, 16

**Other Authorities**

4A Wright & Miller, Fed. Prac. & Proc. Civ.3d § 1101 .............................................10

Defendant Crown Finance Foundation ("CFF" or "Defendant"), a company organized under the laws of Liechtenstein, respectfully submits this memorandum in opposition to Plaintiffs' cross-motion to declare service valid or to permit service by alternative means ("Cross-Mot.").

## Preliminary Statement

Bruce Marks ("Marks") and Marks, LLC d/b/a Marks & Sokolov, LLC (together, "Plaintiffs"), admit that they did not effect proper service on CFF pursuant to Liechtenstein law, or even attempt to do so, pursuant to Fed. R. Civ. P. 4(f)(2)(B). (*See* Cross-Mot. 2-3.) They ask the Court *nunc pro tunc* to excuse their deliberate failure.

CFF provided the Court with a declaration by a Liechtenstein legal expert that sets forth the requirements of Liechtenstein law. While the Wolf Declaration does not use the precise word "prohibited" to describe other forms of attempted service, it does state that "Liechtenstein law *requires* that service of an international summons and complaint be made by letters rogatory" and that such service "*must* be effected by way of mutual legal assistance between the foreign and Liechtenstein courts", even if a "foreign state prescribes the service of judicial documents exclusively via the representative of the parties". (Wolf Decl. ¶ 10) (emphasis added).[1] To say that something "must" be done in a certain way necessarily excludes all other methods of doing that thing.

Alternatively, Plaintiffs seek to have the Court order a method of service that is clearly inconsistent with Liechtenstein law. The Court should reject this effort. Plaintiffs made no effort to comply with Liechtenstein law in their attempted service of CFF. Plaintiffs sued

---

[1] Unless otherwise stated, references to declarations refer to those submitted by CFF with its motion to dismiss, dated February 27, 2009 ("Mot.") (Doc. No. 28). The Seeger Declaration is Exhibit 2 and the Wolf Declaration is Exhibit 4 of that motion.

1

CFF knowing that it was a Liechtenstein entity. Moreover, they make no substantive allegation in the Complaint against CFF. Nor do Plaintiffs allege any fact that would subject CFF to the jurisdiction of the Court. This alone should end this discussion. The Court, in its discretion, should refuse Plaintiffs' attempt to drag CFF before this Court.

## Argument

## I.  SERVICE UPON CROWN WAS INSUFFICIENT UNDER U.S. LAW

On December 12, 2008, Plaintiffs asked the Clerk to effectuate service upon "Alfa Group a/k/a Crown Finance Foundation"[2], pursuant to Federal Rule of Civil Procedure ("Federal Rules" or "Rule(s)") "4(f)(i)(ii)" (sic). On December 15, 2009, the Deputy Clerk caused to be mailed a copy of the Complaint and Summons. On January 16, 2009, Plaintiffs sent the Complaint and Summons to CFF via Federal Express. (Cross-Mot. 2.)

Plaintiffs claim that they served CFF pursuant to Rule 4(f)(2)(C)(ii), which allows service by "mail that the clerk addresses and sends to the individual and that requires a signed receipt" "unless prohibited by the foreign country's law". (Cross-Mot. 4.) Plaintiffs contend that the Wolf Declaration does not state that "service via return receipt mail is prohibited under Liechtenstein law". (*Id*. at 5.) Rather, Plaintiffs state that the Wolf Declaration merely set forth provisions of Liechtenstein Code that prescribe service by certain means. (*Id*.) Plaintiffs assert that Rule 4(f)(2)(C)(ii) allows service by registered mail "so long as it is not expressly prohibited, even if it is not expressly prescribed". (*Id*. at 4.) Finally, Plaintiffs question CFF's reliance on *Jung v. Neschis*, No. 01 Civ. 6993(RMB), 2003 WL 1807202 (S.D.N.Y. Apr. 7, 2003). Plaintiffs' analysis is faulty.

---

[2] Alfa Group is not "also known as CFF". Alfa Group is not an entity, but is a collection of affiliated companies. (Seeger Decl. ¶¶ 6-7.) Indeed, as noted above, certain entities within the Alfa Group (e.g. Alfa Bank) are not held by CFF.

2

Plaintiffs rely on *Resource Ventures, Inc. v. Resources Management Int'l, Inc.*, 42 F. Supp. 2d 423, 430 (D. Del. 1999) for the point that Rule 4(f)(2)(C) permits service, which "while not specifically prescribed by the laws of a foreign country, [is] also not prohibited by such laws". The *Jung* court considered *Resource Ventures* before it made its decision. *Jung* quotes *Resource Ventures* for the proposition that "subsection (f)(2)(C)(ii) limits the forms of service to those that do not violate the law of the country where service is attempted". 2003 WL 1807202, at *2. The paragraph in *Resource Ventures* from which that quote was taken makes the point that registered mail is permissible unless prohibited by foreign law. *Jung* relied on *Resource Ventures* and reached the conclusion that "[h]aving the Clerk of the Court . . . mail service to Defendants is not sufficient, i.e. it is, in these circumstances, 'prohibited by the laws' of Liechtenstein and was, therefore, improper under Rule 4(f)(2)(C)(ii)".[3] *Id.* at *3.

The language used in *Jung* and the Wolf Declaration submitted here is clear. *Jung* noted that "in order to serve a defendant in Liechtenstein, a foreign court *must* ask the High Court of Liechtenstein for assistance in effecting process". 2003 WL 1807202, at *2 (emphasis added). The court concluded that "to properly serve an international summons and complaint in Liechtenstein, a party *must* proceed through Liechtenstein courts". *Id.* at *3 (emphasis added). This language tracks Dr. Wolf's Declaration:

> "Liechtenstein law *requires* that service of an international summons and complaint be made by letters rogatory. Pursuant to §§ 27 to 29 of the Liechtenstein Code of Jurisdiction (Amendment to the Code of Civil Procedure), service of foreign judicial documents *must* be effected by way of mutual legal

---

[3] Plaintiffs' reliance on *SEC v. Alexander*, 248 F.R.D. 108, 112 (E.D.N.Y. 2007) overstates the holding there. The *Alexander* court noted that there are two plausible readings of *Jung* and declined only to follow the second plausible reading. CFF does not disagree with the first plausible reading, that service by registered mail is permitted if not specifically proscribed by foreign law, but contends, like the *Jung* court, that service by registered mail is proscribed by Liechtenstein law.

assistance between the foreign and Liechtenstein courts". (*See* Wolf Decl. ¶ 10) (emphasis added).

To say that something is 'required' or that it 'must' be done some way is necessarily to prohibit all other ways of doing that thing. *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co.*, No. 03Civ.8554(LTS)(JCF), 2005 WL 1123755, at *3 (S.D.N.Y. May 11, 2005), cited by Plaintiffs, confirms this. The court noted:

> "[i]f a summons '*must*' be delivered by a bailiff, then alternative forms of service are indeed prohibited. . . . It would be a different situation if Indonesian law merely provided that service '*may*' be effected by the bailiff; in that circumstance, alternative means of service, while not expressly authorized, would nevertheless not be prohibited". *Id.* (emphasis added).

Thus, Dr. Wolf's Declaration demonstrates that all other methods of service are prohibited, including service by mail by the clerk of a United States federal district court.[4]

## II.    THE COURT, IN ITS DISCRETION, SHOULD REFUSE TO ORDER ALTERNATIVE SERVICE PURSUANT TO RULE 4(f)(3)

### A.    APPLICABLE LEGAL STANDARD

The requirement of proper service of process "is not some mindless technicality". *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991). Rule 4(f)(3) provides that,

---

[4] Plaintiffs' attempt at service also fails because service of documents in a foreign language is only permissible if a German translation is enclosed. (Wolf Decl. ¶ 8.) Plaintiffs did not enclose a German translation here. (Cross-Mot. 3-4.) Service may be quashed for this reason alone. *See Froland v. Yamaha Motor Co.*, 296 F. Supp. 2d 1004, 1008-09 (D. Minn. 2003) (finding service defective and quashing where plaintiff failed to abide by foreign country's requirement to translate complaint and summons into official language of that state). As discussed in Section IV below, Plaintiffs' concern with costs is irrelevant. Plaintiffs brought this action, causing Defendants to expend large sums of money to defend. Further, the Court did not receive a return of summons or a signed receipt for the service Plaintiffs allege to have been authorized here—the registered mail sent by the Clerk of Court. (Cross-Mot. 5-6, n.3; Fed. R. Civ. P. 4(f)(2)(C)(ii); 4(*l*).) Thus, Plaintiffs ask the Court to ratify their attempt at service via courier, which, they admit, was not authorized by any rule. The Court should not find this attempt at service effective under Fed. R. Civ. P. 4(f)(3), since Rule 4(f)(3) cannot be used to seek ex-post ratification of a prior ineffective attempt at service of process. *See Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004).

4

unless otherwise provided by federal law, service may be effected over a person "not within any judicial district of the United States . . . (3) by other means not prohibited by international agreement, as the court orders". The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the discretion of the court. *Prewitt Enters., Inc. v. Org. of Petroleum Exp. Countries*, 353 F.3d 916, 921 (11th Cir. 2003). While there is no hierarchy under Rule 4(f), a district court may

> "require the plaintiffs to show that they have reasonably attempted to effectuate service on defendant and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely to be futile. This threshold requirement, although not expressly provided by [Rule] 4(f)(3), is necessary in order to prevent parties from whimsically seeking alternative means of service and thereby increasing the workload of the courts".

*Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan*, Civil Action No. H-06-2683, 2007 WL 2964817, at *4 (S.D. Tex. Oct. 9, 2007) (internal citations and quotations omitted). As stated in *Export-Import,* cited by Plaintiffs, "[i]n the interests of comity, a district court exercising its discretion under Rule 4(f)(3) should indeed make 'an earnest effort . . . to devise a method of communication that is consistent with due process and *minimizes offense to foreign law*'." 2005 WL 1123755, at *4 (emphasis added); *see also Prewitt*, 353 F.3d at 927; Fed. R. Civ. P. 4(f) Advisory Committee Note (noting that courts should make "an earnest effort" to devise a method of service that "minimizes offense to foreign law".)

**B.     THE COURT SHOULD NOT ORDER ALTERNATIVE SERVICE PURSUANT TO RULE 4(f)(3)**

Plaintiffs seek alternative service over CFF by requesting that the Court allow them to mail documents to (a) Altimo Holdings & Investments Ltd. ("Altimo") at its registered office in the British Virgin Islands ("BVI"); (b) CFF's attorneys in the United States; or (c)

Alforma Capital Markets, Inc.[5] ("Alforma Capital"), at its registered address in New York. Under the circumstances presented here, the Court should not order alternative service.[6]

### 1. Service On Altimo Or Alforma Capital Is Inappropriate

CFF is a holding company, organized under the laws of Liechtenstein. (Seeger Decl. ¶ 8.) Alfa Bank is not a subsidiary of CFF. (Ex. 1, Supp. Rolfe Decl. Ex. A ). Thus, it follows that Alforma Capital, a subsidiary of Alfa Bank, which Plaintiffs seek leave to serve as a subsidiary of CFF, is not a subsidiary of CFF. Alfa Bank is held by ABH Holdings Corp., which in turn is held directly by its beneficial shareholders. (*Id*.) Nor do Plaintiffs offer any evidence that Alforma Capital is an agent of CFF for any purpose. The Court should not permit service on Alforma Capital.

Altimo is a foreign subsidiary of CFF, incorporated in the BVI and held through CFF's ownership of CTF Holdings Ltd. Defendant has found no case where service upon a foreign subsidiary was deemed a proper method of service under Rule 4(f)(3), and Plaintiffs cite no such case. Indeed, Plaintiffs' cases mention only "delivery to the defendant's United States subsidiary". (Cross-Mot. 6.) Thus, service on Altimo is not permissible and would eviscerate the notion of international comity and key principles of corporate law.

### 2. Plaintiffs Should Not Be Allowed To Serve CFF's Attorneys As A Matter Of Constitutional Law And Public Policy

The Court should not order service upon CFF's attorneys in this case, Harkins Cunningham LLP ("Harkins"), or Akin Gump ("Akin"), which has represented CFF in another case but does not represent it in this one. First, Harkins should not be substituted as a matter of

---

[5] Alfa Capital Markets (USA), Inc. is now known as Alforma Capital Markets, Inc. (Ex. 1, Supplemental Declaration of Ronald S. Rolfe ("Supp. Rolfe Decl.") ¶ 3.)

[6] At a minimum, the Court should not decide this issue until it decides the remainder of CFF's motion, given the anemic jurisdictional grounds asserted by Plaintiffs.

constitutional law and public policy. The Federal Rules are clear: a defendant may appear in court to challenge process and/or jurisdiction. *See* Fed. R. Civ. P. 12(b). Neither CFF nor any other defendant should fear that an attorney's appearance to challenge service of process and jurisdiction can itself create a basis for such service, when before there was none. *See Bucks County Playhouse v. Bradshaw*, 577 F. Supp. 1203, 1211 (E.D. Pa. 1983).

Similarly, Akin should not be substituted as a recipient of service on behalf of CFF. Akin represents CFF in the *Norex* case, not this one. (Cross-Mot. 2.) Plaintiffs filed the complaint in *Norex*, where CFF was named as a defendant.[7] (Cpl. ¶ 2.) Plaintiffs have been unsuccessful in virtually every aspect of their prosecution of that case.[8] Plaintiffs have made a cottage industry of filing suits against Russian "oligarchs", including CFF in the *Norex* case, (*Id.* ¶ 1), and should not be allowed to use that case to bootstrap service here.

### 3. Plaintiffs Have Not Undertaken Reasonable Efforts To Serve Process Before Requesting Alternative Service

Plaintiffs' request for permission to serve CFF's attorneys in the United States or Altimo, as a subsidiary of CFF, at its registered office in the BVI, should be rejected for another reason. Plaintiffs' cases are distinguishable from the case at bar in that plaintiffs in those cases undertook reasonable efforts to serve process before requesting alternative service. Plaintiffs here did not. The *Prewitt* court distinguished *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d

---

[7] This is unlike the situation described in *RSM Prod. Corp. v. Fridman,* No. 06 Civ. 11512(DLC), 2007 WL 1515068 (S.D.N.Y. May 24, 2007). There, the court permitted service on Mikhail Fridman by his attorneys, Akin, because Akin had represented Fridman as a plaintiff in another long-running dispute and service was not possible under the Hague Convention. *Id.* at *1, 6. Here, Plaintiffs have created the circumstances that they seek to use to have Akin served on CFF's behalf.

[8] Plaintiffs have failed to obtain discovery in that case after multiple attempts. Moreover, the court dismissed the *Norex* complaint under the doctrine of *forum non conveniens* in 2004. Although the Second Circuit reversed that decision in 2005, the complaint was again dismissed for lack of subject matter jurisdiction in 2007. That decision is on appeal. (Cpl. ¶ 23, n. 1.)

1007, 1014 (9th Cir. 2002), affirming a decision to deny alternative service of process. *See Prewitt*, 353 F.3d at 927-28. The *Rio* court found that the defendant, a Costa Rican internet company doing business in the United States, had a presence in the United States, that physical personal service had been legally attempted by actually serving a legitimate agent of the defendant in the United States and that the defendant had evaded the attempted service. Likewise, in *1st Technology, LLC v. Digital Gaming Solutions S.A.*, No. 04:08 CV 586 DDN, 2008 WL 4790347 (E.D. Mo. Oct. 31, 2008), the court only permitted alternative service after finding that plaintiff had "made reasonable efforts" to serve defendants, who could not be located in Costa Rica. Here, there has been no effort to evade service and no attempt to serve CFF, whose location is known, properly. CFF cannot be faulted for requiring service—there is no requirement that it waive service—to be made upon it pursuant to the only method prescribed under Liechtenstein law, by letters rogatory. *See, e.g. Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967) (service of process, in absence of voluntary appearance or conscious waiver, is indispensable prerequisite to court's jurisdiction).

Plaintiffs made the decision to bring CFF, an entity against which they make no substantive or jurisdictional allegation in the Complaint, into this suit. Ordering alternative service over CFF would accomplish nothing, since, as set forth in CFF's motion to dismiss, Plaintiffs have not stated a prima facie case of jurisdiction over CFF. "Since plaintiffs have neither argued nor made any showing that the facts and circumstances of this case are such that the court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or untried but likely to be futile", the Court should find that Plaintiffs have not demonstrated a need for the Court's intervention. *See Nabulsi*, 2007 WL 2964817, at *7.

### 4. Service By Any Other Method Does Not Minimize Offense To Liechtenstein Law

Any method of service prohibited by Liechtenstein law does not minimize offense to foreign law. *See Export-Import*, 2005 WL 1123755, at *4; *Prewitt*, 353 F.3d at 927. In *Prewitt*, the Eleventh Circuit noted that a method of service upon OPEC that did not comply with Austrian law would not only not minimize offense to Austrian law, but rather, "would constitute a substantial affront to Austrian law". 353 F.3d at 927. Likewise, in *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, No. 1428 (SAS), 01 Civ. 7342, 2003 WL 1807148, at *7 (S.D.N.Y. Apr. 4, 2003), the court noted that "[i]n Austria…the direct service of foreign legal documents by foreign authorities…without the assistance or consent of Austrian authorities is regarded as an infringement of Austria's sovereignty". Like Liechtenstein, Austrian law required service of foreign legal documents by way of letters rogatory. *Id*. Thus, the court directed plaintiffs "to comply with all requirements of Austrian law in any future filings". *Id*.

This Court should apply the same standard and, in the interests of comity, "devise a method of communication that…minimizes offense to foreign law". *Export-Import*, 2005 WL 1123755, at *4. That may be done only by ordering Plaintiffs to serve CFF pursuant to Rule 4(f)(2)(B), which permits service by letters rogatory.

### 5. Rule 4(f) Does Not Authorize Service On Harkins, Akin Or Alforma Capital

Harkins' Philadelphia office has been retained by CFF as counsel for this case only. Akin's New York office represents CFF in the *Norex* case, in which CFF is a defendant. Alforma Capital, not a subsidiary of CFF, is based in New York. (Cross-Mot. 2, Ex. A.)

Rule 4(f)(3) provides for service "not within any judicial district of the United States" by any "means not prohibited by international agreement" as may be directed by the court. Rule 4(h)(1)(A) permits service on a corporation "in a judicial district of the United

States" in the manner prescribed by Rule 4(e)(1), which provides for service by "following state law for serving a summons in an action brought in courts of general jurisdiction" in the forum state or where service is made. Finally, Rule 4(h)(1)(B) allows service upon a corporation "in a judicial district of the United States . . . by delivering a copy of the summons and of the complaint to . . . any other agent authorized by appointment or by law to receive service of process".[9]

Plaintiffs assert that Rule 4(f)(3), which pertains only to service of process "effected in a place not within a judicial district of the United States", permits the Court to direct service upon domestic "agents". (Cross-Mot. 6-7, n.4.) Plaintiffs' reading of Rule 4(f)(3) is wrong; it would render Rules 4(e) and (h) superfluous.[10] Such reasoning is "perplexing". *Kuklachev v. Gelfman*, No. 08-CV-2214(CPS), 2008 WL 5068860, at *3, n.3 (E.D.N.Y. Nov. 24, 2008). Where "[p]laintiffs wish to serve process within the United States[,] [t]he applicable Federal Rule is Rule 4(e)". *Id. See also Silvious v. Pharaon*, 54 F.3d 697, 701-702 (11th Cir.

---

[9] This language tracks Rule 4(e)(2)(C). Thus, these rules should be "construed in the same way absent special circumstances". 4A Wright & Miller, Fed. Prac. & Proc. Civ.3d § 1101.

[10] Plaintiffs' cases do not discuss the interplay between Rules 4(e) and 4(h)(1) (the rules governing service of a corporation within the United States) and Rule 4(f) (the rule governing service of a corporation in a foreign country). Moreover, each case is distinguishable for other reasons. *See RSM*, 2007 WL 1515068 (allowing service via defendant's attorneys where those attorneys represented defendant *as plaintiff* in prior action); *Arista Records LLC v. Media Servs. LLC*, No. 06 Civ. 15319(NRB), 2008 WL 563470 (S.D.N.Y. Feb. 25, 2008) (directing service because Russia's designated Central Authority pursuant to Hague Convention stopped processing all service requests from the United States); *Forum Fin. Group, LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22 (D. Me. 2001) (directing service on defendant's attorney where defendant purposefully evaded service and where attorney had recently accepted service on defendant's behalf on similar matter); *Ehrenfeld v. Mahfouz*, No. 04 Civ. 9641(RCC), 2005 WL 696769 (S.D.N.Y. Mar. 23, 2005) (permitting service on attorneys where locating process server in Saudi Arabia was "extremely difficult at the present time"); *BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263 (E.D. Va. 2005) (permitting service on attorney where motion was unopposed and court concluded that plaintiff had "exhausted all reasonable avenues to obtain service"). Here, Plaintiffs know how to locate CFF, and CFF has done nothing to evade service.

1995) ("In deciding [whether] subsection [4(e) or 4(f)] applies, the focus is upon the place where service is effected, not the location of the defendant at the time of service"). Thus, Rules 4(h)(1) and 4(e)(1) apply to the extent Plaintiffs wish to serve domestic "agents". Because neither Rule 4(h)(1) nor 4(e)(1) contains a "catchall provision allowing the court to fashion a method of service", the Court may not order service upon CFF via domestic "agents" unless the provisions of Rules 4(h)(1) or 4(e)(1) allow for such service. *Gelfman*, 2008 WL 5068860, at *3, n.3. Thus, service of a domestic agent under a method fashioned by the Court pursuant to Rule 4(f)(3) is inappropriate. Moreover, service is inappropriate pursuant to Rules 4(e)(1) or 4(h)(1).

## III. SERVICE IS INAPPROPRIATE PURSUANT TO RULES 4(h) AND 4(e)

Plaintiffs request that the Court direct service pursuant to Rules 4(e) and 4(h) upon Harkins, Akin and/or Alforma Capital. Rule 4(f)(3) does not permit the Court to direct service on a domestic "agent". Rules 4(e) and 4(h) do not permit the Court to fashion a method of service. Those provisions provide only limited methods of service, which do not apply here.

### A. APPLICABLE LEGAL STANDARD

Rule 4(h) provides for judicial service "(1) in a judicial district of the United States (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process". Rule 4(e)(1) governs service "in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made".

Rule 4(h)(1)(B), like Rule 4(e)(2)(C) does not contain a "catchall provision allowing the court to fashion a method of service". *Gelfman*, 2008 WL 5068860, at *3, n.3.

Defendant could find no case (and Plaintiffs cite none) allowing a court to appoint an agent "by law" for purposes of Rule 4(h)(1)(B), or its parallel provision, Rule 4(e)(2)(C).

## B. SERVICE UPON HARKINS, AKIN AND/OR ALFORMA CAPITAL IS INAPPROPRIATE UNDER RULE 4(h)(1)(B)

Rule 4(h)(1)(B) permits service of a corporation "in a judicial district of the United States . . . by delivering a copy of the summons and . . . complaint to . . . any other agent authorized by appointment or by law to receive service of process". Plaintiffs assert that "court ordered service on counsel . . . serves as effective authorization 'by law' for counsel to receive service", (Cross-Mot. 9), but Plaintiffs cite only to cases addressing Rule 4(f)(3). The phrase "by law", as used in Rule 4(h)(1)(B), refers to statutory law or to common law agency. *See Fleming v. Malouf*, 7 F.R.D. 56, 57 (W.D.N.Y. 1947); *see also Nelson v. Swift*, 271 F.2d 504, 505 (D.C. Cir. 1959) ("The phrase 'by law' refers to statutory provisions for substituted service").[11]

Alforma Capital is not a subsidiary of CFF. Plaintiffs offer no evidence that it is an alter ego of CFF (as it is not) or that it has been expressly or implicitly authorized by CFF to serve as CFF's agent (as it has not). Neither do Plaintiffs point to any federal or state statute that would operate to make Alforma Capital CFF's agent. Thus, Alforma Capital is not an "authorized agent by appointment or by law".

Neither Harkins nor Akin has been authorized by CFF to receive process. Plaintiffs do not cite any statute that makes them agents "by law". Service upon them would be invalid. *United States v. Marple Cmty. Record, Inc.*, 335 F. Supp. 95, 101 (E.D. Pa. 1971) (noting that valid service upon an agent required showing that "agent" was actually appointed by

---

[11] This is also true in New York. *See, e.g.*, *Gustaff v. Marathon Healthcare Corp./Monarch Staffing*, No. 22611/08, 2009 WL 55009, at *3 (N.Y. Sup. Ct. Jan. 8, 2009) (unreported table decision); *Linden Chiropractic, P.C. v. State-Wide Ins. Co.*, 816 N.Y.S.2d 888, 892 (N.Y. City Ct. 2006).

defendant for the specific purpose of receiving process); *Allstate Ins. Co. v. Funai Corp.*, 249 F.R.D. 157, 162-163 (M.D. Pa. 2008) (same).

The Court should decline to order service upon any of these entities. Unlike Plaintiffs' cases, there is an authorized method in place to serve CFF, and CFF has not evaded service. Plaintiffs' contention that obtaining letters rogatory is time-consuming and inconvenient is unavailing. Plaintiff in *Brown v. Our Lady of Lourdes Med. Ctr.*, 767 F. Supp. 618, 622 (D.N.J. 1991), *aff'd*, 961 F.2d 207 (3d Cir. 1992) asked the court to compel defendants' counsel to accept service of process for certain defendants, arguing that personal service was time-consuming and inconvenient. The court affirmed the magistrate's ruling requiring plaintiff to comply with Rule 4 despite any inconvenience to him. This Court should do the same. Neither Rule 4(h)(1) nor Rule 4(e)(2) gives a court authority to create an agent *ex nihilo*.

### C.  SERVICE UPON HARKINS IS INAPPROPRIATE UNDER PENNSYLVANIA LAW

Because Rule 4(h)(1)(B) does not permit service upon CFF under the circumstances, Plaintiffs' only option for serving Harkins on behalf of CFF is to do so pursuant to Pennsylvania law. *See* Rule 4(e)(1). Plaintiffs do not undertake any analysis of Pennsylvania law with respect to serving Harkins. (*See* Cross-Mot. 8-9.) Rather, they simply conclude, without citation, that "Pennsylvania law . . . permit[s] courts to allow service upon agents of foreign defendants, including service on . . . counsel located in the United States". (*Id*. at 8.) Thus, we can only speculate how Plaintiffs intend to serve Harkins under Pennsylvania law.

The Pennsylvania Rules of Civil Procedure ("Pa. Rule(s)") pertaining to service of process are to be "narrowly construed and strictly followed". *U.K. LaSalle, Inc. v. Lawless*, 618 A.2d 447, 449 (Pa. Super. Ct. 1992) (citations omitted). Pennsylvania Rule 402(a)(2) permits service "by handing a copy (iii) at any office or usual place of business of the defendant

13

to his agent".  Rule 402(b) allows original process to be served on a defendant's attorney only if

the attorney is a duly authorized agent to receive process, which requires filing an acceptance of

service form certifying that the attorney is authorized to accept service. *Santarelli v. Procaccini*,

42 Pa. D. & C.4th 82, 85 (C.P. Phila. 1998).  Actual notice is insufficient to bring a defendant

within the jurisdiction of a Pennsylvania trial court.  *Id*. at 86. (citation omitted).

       CFF has no office or usual place of business in Pennsylvania.  (Seeger Decl. ¶

11.)  Thus, it has no agent pursuant to Rule 402(a)(2)(iii).  Moreover, no acceptance of service

form has been submitted to the Court.  *See Santarelli*, 42 Pa. D. & C.4th at 85.  Plaintiffs offer no

other evidence that CFF has expressly authorized its Pennsylvania counsel to accept service on

its behalf.  *See Lawless,* 618 A.2d at 450; *City of Philadelphia v. Berman*, 863 A.2d 156, 161

(Pa. Commw. Ct. 2004).  Service on Harkins as an agent of CFF would therefore be improper.[12]

## D.  SERVICE UPON AKIN AND/OR ALFORMA CAPITAL IS INAPPROPRIATE UNDER NEW YORK LAW

       Plaintiffs ask the Court to order service upon Akin or Alforma Capital pursuant to

Pa. Rule 404(3).  (Cross-Mot. 8-9.)  Rule 404(3) directs the Court to look to New York law, N.Y.

C.P.L.R. § 311, which governs service upon any domestic or foreign corporation.[13]  Section

311(a)(1) of the C.P.L.R. permits personal service "upon any . . . foreign corporation, to . . . any

other agent authorized by appointment or by law to receive service".  Section 311(b) provides for

personal service upon a foreign corporation if it is impracticable under section (a), in which case,

---

[12] To the extent Plaintiffs seek permission to serve by "special order" pursuant to Pa. Rule 430(a), they fare no better.  Service by special order is an "extraordinary measure", appropriate only after all other methods available under the rules have been exhausted.  *See Countrywide Home Loans, Inc. v. Stringer*, No. 3:CV-07-2072, 2008 WL 3853229, at *2 (M.D. Pa. Aug. 15, 2008) (citing cases).

[13] Presumably, New York law applies because Alforma Capital is incorporated in New York and Akin has an office in New York, from which it has represented CFF in the *Norex* case.

"service upon the corporation may be made in such a manner, and proof of service may take such form, as the court, upon motion without notice, directs".

CFF has not authorized Alforma Capital to be its agent for purposes of service of process.  Likewise, Akin has not been authorized by CFF to be its agent.  *See Al-Dohan v. Kouyoumjian,* 461 N.Y.S.2d 2, 4 (1st Dep't 1983) (holding that transmittal of papers to defense counsel does not serve as a substitute for personal service without proof that the attorneys were designated agents for service of process).  Similarly, neither entity is an agent "by law".  *See* section III-B, *supra,* n. 11.  Further, § 311(a), which provides for service on an agent authorized "by law", cannot mean court-appointed agent, since § 311(b) allows the court to devise a service method if service under section (a) is impracticable.

Regardless, in cases involving a foreign corporation having its principal place of business overseas, as is the case here, "the doctrine of comity trumps CPLR § 311[a][1] and requires that service of process be effectuated not according to New York law, but in compliance with the laws of the sovereignty where the foreign corporation is located".  *Hypo Bank Claims Group, Inc. v. Am. Stock Transfer & Trust Co.*, 791 N.Y.S.2d 870, at *7 (N.Y. Sup. Ct. 2004) (unreported table decision) (citation omitted); *see also E. Cont'l Gems, Inc. v. Yakutiel*, 582 N.Y.S.2d 594, 595-96 (N.Y. Sup. Ct.), *aff'd,* 591 N.Y.S.2d 778 (1st Dep't 1992) (refusing to confer jurisdiction over defendant where service was made in contravention of Swiss law).  Service upon Akin or Alforma Capital would not be in compliance with Liechtenstein law, and therefore would violate the doctrine of comity.

Section 311(b) is also inapplicable.  First, comity requires that a plaintiff abide by foreign law when attempting to serve a foreign company with its primary place of business overseas.  *Hypo Bank*, 791 N.Y.S.2d, at *7 (noting that § 311(b) would only be a proper method

of fashioning service if defendant interfered with a "good faith attempt by plaintiffs to serve process in accordance with Austrian law".) Second, Plaintiffs' invocation of § 311(b) is premature. Plaintiffs have not shown that timely service by other methods is "impracticable", which is required for service to be ordered under § 311(b). *See David v. Total Identity Corp.*, 857 N.Y.S.2d 380, 381-82 (4th Dep't 2008) ("[A] plaintiff seeking to effect expedient service must make some showing that the other prescribed methods of service could not be made") (citation omitted). Thus, Plaintiffs' request pursuant to N.Y. C.P.L.R. § 311(b) is premature.

## IV.    PLAINTIFFS' CONCERNS WITH DELAY AND EXPENSE ARE UNFOUNDED

Plaintiffs state "[t]here is no good sense reason to impose temporal delay . . . and financial burden in excess of $20,000 on Plaintiffs". (Cross-Mot. 9.) Plaintiffs claim they "are an individual and small law firm". (*Id.*) Issues relating to costs are irrelevant. If Plaintiffs are victorious, they can recover their expenses for service and translation as costs taxable to CFF. *Lazaridis v. Wehmer*, Civ. Action No. 06-793 SLR, 2008 WL 4758551, at *1, n.3 (D. Del. Oct. 28, 2008). Moreover, Plaintiffs, with offices in Philadelphia and Moscow, make it their business to take on Russian "oligarchs". (Cpl. ¶ 1.) They are hardly an unsophisticated *pro se* plaintiff, and the amount is small in comparison to what it would cost CFF to defend this case. They also contend that initiation of letters rogatory is unduly burdensome. Rule 4(f)(2)(B) specifically contemplates letters rogatory.[14] Finally, Plaintiffs' concern about timing should be of no concern. Their failure to effect proper service is solely their doing. Indeed, by their own calculation, had they initiated the letters rogatory process when they filed their Complaint, CFF

---

[14] *Export-Import*, 2005 WL 1123755, at *5, is inapposite. There, defendants failed to abide by an agreement that provided for a method of service, requiring that defendants maintain an agent for service of process in New York. *Id.* at *4. Only after plaintiff "repeatedly attempted to effect service in the manner provided for" in the agreement, only to be frustrated by defendants, did the court determine that letters rogatory would be "unduly burdensome". *Id.* at *4-5.

may have already been properly served. Plaintiffs do not claim that they reasonably investigated methods of service in Liechtenstein, as they are required to do. *See Allstate Ins. Co.*, 249 F.R.D. at 160 (noting that "the party asserting the validity of service bears the burden of proof on that issue") (citation omitted). Plaintiffs should not be rewarded for their failure to attempt adequate service.

### Conclusion

For all the foregoing reasons, CFF respectfully requests that the Court deny Plaintiffs' Cross-Motion.

March 30, 2009

Respectfully submitted,

HARKINS CUNNINGHAM LLP,

By

_/s/ Eleanor Morris Illoway_
John G. Harkins, Jr. (04441)
Eleanor Morris Illoway (40632)
2800 One Commerce Square
2005 Market Street
Philadelphia, PA 19103
(215) 851-6700

CRAVATH, SWAINE & MOORE LLP,

Ronald S. Rolfe
K. Timothy Kline
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

*Attorneys for Defendant Crown Finance Foundation.*

## CERTIFICATE OF SERVICE

I, Eleanor Morris Illoway, hereby certify that on March 30, 2009, I caused to be served upon the following parties, by electronic mail, a true and correct copy of Crown Finance Foundation's Memorandum of Law in Opposition to Plaintiffs' Cross-Motion to Declare Service Valid or to Permit Service by Alternative Means, and Proposed Order, the originals of which are being filed with the Clerk of the Court.

> George Bochetto, Esquire
> BOCHETTO & LENTZ PC
> 1524 Locust Street
> Philadelphia, PA 19102
>
> Bruce S. Marks, Esquire
> Thomas C. Sullivan, Esquire
> Anna V. Brown, Esquire
> MARKS & SOKOLOV, LLC
> 1835 Market Street, 28th Floor
> Philadelphia, PA 19103
>
> Alexander Kerr, Esquire
> Lisa M. Salazar, Esquire
> MCCARTER & ENGLISH, LLP
> Mellon Bank Center, Suite 700
> 1735 Market Street
> Philadelphia, PA 19103

/s/ Eleanor Morris Illoway
Eleanor Morris Illoway